## FAY v. MASON et al.

### (Circuit Court, W. D. New York. January 31, 1903.)

### No. 139.

1. PATENTS—REISSUES.
   Where a reissue is for the same invention, a broader claim than that in the original patent will not invalidate it.

2. SAME—DATE OF INVENTION—EVIDENCE.
   The date of invention is presumptively that of the issue of the patent, and evidence of a prior conception of the completed invention must be clear, positive, and unequivocal. The mere assertion of the patentee that he conceived the invention on a prior date, unaccompanied by corroborative evidence showing that his conception was sufficiently specific and definite to enable him to construct a machine (if the patent be for a machine) which is capable of successful operation, is insufficient.

3. SAME—SUIT FOR INFRINGEMENT—PLEADING.
   The rule that the burden rests upon the complainant in a suit for infringement to prove that his invention was prior to defendant's applies only where the issue is raised by defendant by giving the 30 days' notice required by Rev. St. § 4920 [U. S. Comp. St. 1901, p. 3394]; otherwise complainant's patent is sufficient evidence prima facie that he was the original inventor.

4. SAME—INFRINGEMENT—IRONING MACHINE.
   The Fay reissue patent, No. 11,664 (original, No. 560,819), for a machine for smoothing the edges of collars and cuffs, claims 1, 2, 3, and 4, and No. 678,949, to the same inventor, for an improvement thereon, both *held* not anticipated, valid, and infringed.

In Equity. Suit for infringement of reissued letters patent No. 11,664 (original, No. 560,819), issued May 17, 1898, and No. 678,949, issued July 23, 1901, both to Fred E. Fay for improvements in ironing machines. On final hearing.

Macomber & Ellis, for complainant.

Frederick F. Church (A. Parker-Smith, of counsel), for defendants and intervener.

HAZEL, District Judge. The complainant is the inventor and patentee of a machine for smoothing edges of cuffs and collars. His original patent, No. 560,819, granted April 13, 1897, was reissued May 17, 1898, on application filed within four months after the issuance of the original patent. Its number is 11,664. On July 23, 1901, an improvement patent, No. 678,949, was granted to complainant. The bill is in the usual form, and alleges conjoint infringement of both patents, and prays for an injunction and accounting. The defendants named in the title are mere users of the machine manufactured by the inventor, W. H. Rickey, under patent No. 660,277, issued to him by the Patent Office October 23, 1900, nine months prior to the date of complainant's improvement patent, but subsequent to the filing of the application therefor. Infringement of claims 1, 2, 3, and 4 of the reissued patent, and of claims 2, 3, 4, 18, 21, 23, 24, 25, 26, 27, 31, and 33 of the improvement patent, is charged. The essential elements of

¶ 1. See Patents, vol. 38, Cent. Dig. § 208.

the invention are concisely stated in claim 2 of the reissue, which reads as follows:

"(2) An ironing machine having a rotatable head, a circular groove in the head, and guide on the same plane as a side of the groove, forming a projecting wall to the latter, substantially as set forth."

The specification of the reissued patent says:

"An object of my invention is to greatly increase the convenience and facility of adjusting the edge of the collar in the groove, thus to increase the rapidity with which the work can be done. In this relation my invention comprises an ironing machine in which the rotating head has a peripheral groove, the lower wall of which is wider than the upper wall, and projects to form a step, rest, and guide for catching the cuff or collar, and guiding the edge thereof into the groove."

Claim 2 of the improvement patent substantially embodies all the elements of the enumerated claims of the reissued patent, and an arrangement by which the ironing heads, varying in size and placed in two parallel lines, yield when the collar or cuff comes in contact, and move back into place when the article is withdrawn. The claim reads as follows:

"(2) An ironing machine comprising two or more grooved circular heads, adapted to iron the edge of a starched collar or cuff, and yielding supports for the heads, whereby the latter are permitted to follow the outline of said edge as the article bears thereon."

The defenses interposed are many. They relate chiefly to the inoperativeness of the reissued patent, anticipation, expansion of claims, and noninfringement. No expert witnesses were sworn on the hearing by defendants to explain any of the many patents, foreign and domestic, set out in the answer in anticipation of the reissued patent. Two only were offered in evidence by the defendants, a third finding its way into the record by stipulation. These patents are Burges' United States patent, No. 557,766, of April 7, 1896 (application filed October 26, 1895); Senkbeil German patent, No. 57,148, dated June 15, 1891; Gantenberg German patent, No. 77,219, dated October 10, 1894. It is submitted by the defendants that the analysis made by complainant's expert witnesses of these prior patents, and the inferences deducible from their testimony, convincingly disclose the inoperativeness of complainant's machine; that if the prior ironing machines in evidence are inoperative the complainant's machine, by comparison, is also practically incapable of successful operation; and, conversely, if the court decides that the complainant's machines are practically inoperative, then the patents are completely anticipated by the Senkbeil, Gantenberg, and Burges patents.

The defense of anticipation will first be considered. According to the views of the defendants, complainant's prima facie case discloses the invalidity of the reissued patent on two seemingly inconsistent theories. Its validity is challenged on the one hand because the testimony tends to establish the inoperativeness of the Gantenberg and Senkbeil patents cited in anticipation, and because the asserted differentiating features between those patents and the reissued patent do not prove operativeness in complainant's machine. This assertion requires an examination of the testimony offered by complainant to

substantiate the practical utility of the machine for which the patent was granted. Before so doing, I will endeavor to make clear what the patentee claims for his invention. According to his view, a groove in an iron circular rotatable head designed to smooth the rough edges of cuffs and collars requires in its construction walls or sides slanting from the groove to the periphery, and conforming to the rounded shape of the collar or cuff edge. The specification of the reissued patent sets out that the rotatable ironing head by preference is cone-shaped, and is provided with steps having peripheral grooves, the lower walls of which are on a line with the next lower step. He does not, however, confine himself to that method of construction, and it appears by the proofs that several ironing rotatable heads having suitable grooves may be used alternately by the operator to facilitate the ironing. Any one of the curved grooves suitable for the work may be used, depending somewhat upon the roughness of the collar or cuff edge. The ironing head or series of heads described under patent No. 678,949, and improvement of the reissued patent, are supported from below a table or standard upon which they are mechanically attached. The slant of the grooves, as already pointed out, enables the operator to dexterously guide the collar or cuff to the rounded part and to thereby smooth its edge. In order to facilitate the ironing and successfully operate complainant's machine, it is essential that the grooves should be circular and accurately conform to the specification. Unless the groove guide or ledge described in the claims is present, the machine is not capable of practical operation. The testimony of the expert witnesses is altogether directed to the inoperativeness of the prior art and the practical utility of the machine described in the reissued patent. The proofs show that a V-shaped groove not only retards the ironing, but, on account of its conformation, tends to throw the article ironed out of the smoothing part of the groove, while a parallel or rectangular groove tends to roughen the side or edge of the cuff or collar ironed. Such a result obviously defeats the object of the patent, and renders the success of such grooves impracticable. It is unnecessary to decide whether the Burges patent is prior to that of complainant's invention, as I am satisfied by the evidence that it did not suggest the invention in suit. The machine is for folding a collar, and the groove there described has an edged disk which pressed the collar into the groove. It has no guide or ledge, and therefore would be unable to perform the functions of complainant's groove. Defendants' best reference, the Gantenberg patent, is for ironing edges of collars and cuffs. It has a rotatable head and circular groove. Clearly, this invention is first, and if practically operative must limit the scope of the claims in suit. The Senkbeil machine is a hand device, and has longitudinal fixed grooves, without a guide or ledge, and is only practicable for ironing articles of uniform thickness. Is either invention capable of successful practical operation? The expert witnesses, two of whom are practical laundrymen, uniformly negative their operativeness. Through the absence of the guide or ledge to facilitate ironing, the Senkbeil and Gantenberg inventions are, according to the experts, incapable of successful practical operation. I am of the same opinion. The guide or

ledge of the patent in suit serves a distinctive object, and undoubtedly is a valuable adjunct to the circular grooving of complainant's invention. That the grooving is circular, and that the patentee intended to describe a circular groove, does not admit of serious doubt. The defendant vigorously insists that a scrutiny of the cross-examination of the expert witness Leary discloses that the walls of the grooves shown in the reissued patent are parallel, and not slanting or flaring, and therefore the reissued patent comes directly within the scope of the Gantenberg patent. The witness, however, explains that the details of the drawings of Figs. 2 and 3 of the Fay reissued patent are on such a small scale that it was difficult for him to discern whether there was a slant of the outer wall to the groove or not. The proofs sufficiently show that the walls of the groove in complainant's invention were not parallel and that the grooves were circular in form. A separate and distinctive element, although a very small one, has made the Fay machine practical and useful. The defendants had it in their power to show by evidence that the groove without slanting walls was capable of practical usefulness. This they have failed to do. They prefer to rely on the inferences which they claim may be drawn from the testimony of complainant's witnesses, that if the Senkbeil and Gantenberg devices were inoperative the reissued patent must suffer the same fate. The uncontroverted evidence, however, does not warrant such inferences. The testimony is not susceptible of that interpretation. The specifications and drawings of the alleged anticipating foreign patents are not sufficiently clear to enable me to determine that the Senkbeil and Gantenberg patents include the essential elements of the Fay invention. Seymour v. Osborne, 78 U. S. 516, 20 L. Ed. 33; Hanifen v. E. H. Godshalk Co., 28 C. C. A. 507, 84 Fed. 649; Cohn v. Corset Co., 93 U. S. 366, 23 L. Ed. 907; Eames v Andrews, 122 U. S. 40, 7 Sup. Ct. 1073, 30 L. Ed. 1064; Downton v. Milling Co., 108 U. S. 466, 3 Sup. Ct. 10, 27 L. Ed. 789. The Gantenberg patent does not claim or describe a slanting wall or ledge to guide the collar or cuff to the ironing groove. I am persuaded by complainant's expert witnesses that it was not a complete and operative invention. Their evidence is supported by the descriptions and drawings. The practical success of complainant's invention is shown by its general use.

The complainant testifies that the "commercial machine" which embodies the claims of the infringed patents has been adopted by many large laundries. Expert witness Cooper, himself a laundryman, testifies that he uses two at his laundry. In view of the Gantenberg and Senkbeil patents, the Fay invention appears to be a very small one, but I think it comes within that class of patents where the inventor who has taken the final step which has turned a failure into success should not be deprived of the fruition of his labors or hopes. In re Barbed-Wire Patent, 143 U. S. 275, 12 Sup. Ct. 450, 36 L. Ed. 161; Palmer v. Johnston (C. C.) 34 Fed. 336; Wilcox v. Bookwalter (C. C.) 31 Fed. 224. Complainant testifies that several experimental machines were constructed before a satisfactory result was achieved. First, a rotatable head and circular groove was employed, without, however, the slanting walls or guide. No satisfactory re-

sults were produced. Friction caused by contact of the edge of the collar or cuff with the groove of the rotating wheel excluded the collar or cuff from the ironing surface of the groove. Another machine was constructed having a guide which was formed by cutting away one wall or side of the groove, the other wall projected forming a ledge or guide to feed the ironed article to the groove or the ironing portion of the head. This was new, and was something beyond the ability of the mechanic skilled in the art. This would appear to corroborate the impracticability of the Gantenberg and Senkbeil inventions, and entitles the patent to more than a limitation to precise claims and to greater merit than defendants are willing to accord. Giving effect to that construction, the machine of the defendants comes within the scope of the reissue. The defendants' machine is the equivalent of complainant's rotatable head and peripheral groove and guide or ledge upon which to support or aid the article into the groove, which leads to the same result in substantially the same way. Therefore claims 1, 2, 3, and 4 of complainant's reissued patent include defendants' machine, although of different construction. The doctrine which applies is the one well stated in Machine Co. v. Lancaster, 129 U. S. 263, 9 Sup. Ct. 299, 32 L. Ed. 715, where the court in its opinion uses the following language:

"Where an invention is one of a primary character, and the mechanical functions performed by the machine are, as a whole, entirely new, all subsequent machines which employ substantially the same means to accomplish the same result are infringements, although the subsequent machine may contain improvements in the separate mechanisms which go to make up the machine."

The reissued patent: The grant of the reissued patent presupposes the inoperativeness or imperfection of the original patent on account of defective or insufficient specification. Act 1870, c. 230, § 53, 16 Stat. 205 [U. S. Comp. St. 1901, p. 3393]. The Revised Statutes provide that a reissue shall only be granted when the alleged defect or insufficiency has arisen through inadvertence, accident, or mistake. These are conditions precedent. Now, it is asserted by defendants that the patentee has gone beyond these conditions by including in the reissued patent an enlargement of the terms of his actual invention. Assuming the assertion to be well founded, would that invalidate the reissue? To extend or enlarge the claims beyond the scope of the original invention by inclusion of claims for another invention undoubtedly invalidates the patent, but where the reissue is for the same invention a broader claim than the original will not invalidate it. Topliff v. Topliff, 145 U. S. 156, 12 Sup. Ct. 825, 36 L. Ed. 658; Miller v. Brass Co., 104 U. S. 350, 26 L. Ed. 783. In the Topliff Case the Supreme Court, in passing upon the validity of the reissued patent in that case, said:

"It is a mistake to suppose that that case (Miller v. Brass Co., 104 U. S. 350, 26 L. Ed. 783) was intended to settle the principle that under no circumstances would a reissue containing a broader claim than the original be supported."

A patentee has the undoubted right to amend either his description or the claims, not only as a protection to himself, but to ac-

quaint the public with his invention in such clear phraseology as will permit any person skilled in the art to construct the machine or improvement. In the absence of laches in obtaining a reissue, it is presumed that the conditions precedent upon which a reissued patent is authorized actually existed. It is broadly contended by the defendant that claims 1, 2, 3, and 4 of the reissue are for a different invention from that claimed in the original patent. I do not so regard them. I am of the opinion that the reissue is supported by the authorities. As already stated, by the later patent the machine described in the reissue was practically improved by arranging a series of yielding iron heads in parallel lines, five of which were constructed on each side of the machine, supported by a table or standard. This machine, on account of its expensive construction, was not manufactured. Another machine—one of less cost and modified construction, but embodying the elements of the reissue and improvement patents—was placed upon the market. Its practical utility has been generally recognized by the trade. The defendant contends that as the improvement patent was issued subsequent to the Rickey patent, assuming the machines to be practically the same, the defendants do not infringe any of the claims of that invention. The defendant's patent was granted to him October 23, 1900, while complainant's improvement patent is dated July 23, 1901. It was issued upon an application dated December 14, 1897, as appears by the date upon the specification. As the file wrapper containing the application is not produced in evidence, the date of invention is presumptively the date of issue of the patent, unless prior invention is established by convincing proof. Walk. Pat. § 129. It is uniformly held that, as the evidence of prior conception of the completed invention is within the knowledge and control of the party submitting it, the proof must be clear, positive, and unequivocal. Thayer v. Hart (C. C.) 20 Fed. 693; Wheaton v. Kendall (C. C.) 85 Fed. 666; Michigan Cent. R. Co. v. Consolidated Car-Heating Co., 14 C. C. A. 232, 67 Fed. 121. The mere assertion of the inventor that at the time specified he conceived the invention, unaccompanied by additional evidence, is insufficient. He must satisfy the conscience of the court that his invention was sufficiently specific and definite to enable him to construct a machine, if the invention be for a machine, which is capable of successful operation. Reeves v. Bridge Co., 5 Fish. Pat. Cas. 456, Fed. Cas. No. 11,660. Authorities abound which hold that the complete conception of the idea of the invention may be shown by sketches and drawings, followed by reasonable diligence in perfecting it. Rob. Pat. § 380. It must appear, however, that the patentee was the first to perfect and adopt the invention to actual use. Wheaton v. Kendall, supra. The complainant here relies upon the oral testimony of the inventor to establish prima facie complete conception at a time nearly two years anterior to the Rickey patent. The complainant on that point merely testifies that he commenced the construction of the machine described in letters patent No. 678,949 in the month of July or August, 1897, that it was not completed until early in the year 1898, and that the machine immediately went into general use. The testimony offered to establish prior invention is meager, and

uncorroborated by any drawings or other definite description. The defendant invokes the rule laid down in Mergenthaler v. Scudder, 11 App. D. C. 264, and argues that evidence of an earlier conception than that obtained by the letters patent must be corroborated. The question of priority of invention calls for an independent examination of the evidence bearing upon that contention. It is undoubtedly the rule that the burden is upon the complainant to show that he invented his improvement earlier than the defendant. That rule has application only where the defendant undertakes to establish by evidence that he has first invented his machine. Prima facie, Fay was the original inventor of the patents in suit. This must be overcome by competent evidence. The facts disclosed by the record are peculiar and unusual. The Rickey patent was not offered in evidence by the defendant to establish a priority of invention. The priority of the Fay improvement patent is not questioned by the pleadings. The Rickey patent is not set up in the answer as anticipatory of complainant's improvement patent, nor did the defendants, as required by section 4920 of the Revised Statutes [U. S. Comp. St. 1901, p. 3394], give notice in writing 30 days before the hearing that they intended to prove such priority. This provision of the law makes the patent prima facie evidence of (1) the patentability of the invention; (2) that the invention was first conceived by the patentee; and (3) that he has made the public fully and clearly acquainted with what is claimed to be a new discovery. A different rule prevailed under the common law. The burden of proof rested primarily upon the patentee, and, under the general plea of denial, a defendant was permitted to controvert the patentability of the invention and priority of conception without previous notice to the complainant. It is settled by abundant authority that the legal effect of the statutory requirement presupposes a notice to a complainant of the character and nature of the proposed attack upon the validity of the grant. Rob. Pat. §§ 987–990; Roemer v. Simon, 95 U. S. 215, 24 L. Ed. 384. Complainant rested upon a prima facie showing of infringement. Defendants offered no evidence except the Senkbeil, Gantenberg, and Burges patents, which are claimed to anticipate the reissued patent. The defendants have not complied with this provision of section 4920 of the Revised Statutes [U. S. Comp. St. 1901, p. 3394]. No evidence was given showing the Rickey patent to be prior in date. Not having challenged the validity of the Fay improvement patent as against the Rickey patent by competent procedure, defendants must be deemed to have waived such defense upon this hearing. The introduction of the Rickey patent in the record by the complainant cannot be considered in defendants' favor upon the question of priority. It was brought into the record for a different purpose. To hold that it may now be considered in anticipation of the Fay improvement patent would in effect deprive complainant of his right to establish an earlier conception than that which arises from the grant of the patent. It was in defendants' power, under proper procedure, to prove that the Rickey patent was a prior invention, or, not having adopted that procedure, to bring it into the case, for the purpose of limiting the claims of the Fay improvement patent. Neither having

been done, they have elected not to avail themselves of these defenses. The authorities on this point cited by counsel for defendants in his supplementary brief do not apply. They chiefly refer to a complainant's waiver of the notice required by the statute because of failure on his part to seasonably object to evidence showing prior invention which otherwise would have been excluded. Whatever value there may be to the Rickey patent, as an improvement on the Fay generic invention, is only available by conjoint employment in the combination described by the claims of the Fay reissue. Such employment has already in this opinion been held infringement. Without such unwarranted employment the Rickey patent lacks utility.

Infringement: The defendants employ in the machine used by them the equivalent of the improvement described in the reissued patent, as heretofore stated. The pivotally swinging irons are functionally similar to the rotatable grooved ironing heads of the improved Fay machine. They are arranged to yield in groups or series. The new feature described in the Rickey patent is a pivotally swinging dampener. In other respects the combination employed infringes claims 1, 2, 3, and 4 of the reissued patent, and also the claims of the improvement patent, which describe a series of two or more grooved circular heads and the "yielding supports for the heads." The point is raised that the phraseology of the specification wherein the patentee states that "my invention relates to improvements upon those machines for ironing," etc., is an admission negativing complainant's claim to a broad invention. Robinson, in his work on Patents, § 211, discussing this subject, says:

"An improvement is thus neither the creation of a means entirely new nor a mere formal variation of the old. It occupies an intermediate position, yet often practically it approaches so nearly to the one or to the other that the line of demarcation becomes quite obscure."

Robinson also calls attention to the prevailing practice by which an entirely new means is often described in the specification as an improvement. Therefore the effect of the use of the word "improvement," whenever found in a patent, must be governed by the prior art, reference to which will disclose the true status of the patent, whether the improvement is an independent invention, or merely an alteration or addition to that which already existed. A discussion of any other question raised is deemed unnecessary.

Complainant is entitled to a decree for an injunction and accounting. Decree may be entered accordingly.