## BEADLE v. F. W. WOOLWORTH CO.
### No. 81.

Circuit Court of Appeals, Second Circuit.
Nov. 27, 1939.

Gifford, Scull & Burgess, of New York City (Newton A. Burgess and Joseph V. Meigs, both of New York City, of counsel), for plaintiff-appellant.

Samuel E. Darby, Jr., and Lester F. Dittenhoefer, both of New York City (Walter A. Darby, of New York City, of counsel), for defendant.

Before L. HAND, CHASE, and CLARK, Circuit Judges.

CHASE, Circuit Judge.

The patent in suit is U. S. No. 1,916,943 granted to Blanche E. Beadle on July 4, 1933 on her application filed February 23, 1932 for a hair former. She is the owner of the patent and the plaintiff. She has alleged infringement by the defendant of claims 5, 8, 9 and 14 by the sale of hair formers in the Eastern District of New York. The decree from which this appeal was taken upheld the validity of all the above claims and the infringement of 5 and 9 by the sale of one of the accused devices. The other claims were held not infringed and both parties appealed. Infringement to the extent found below is not here contested provided the claims are valid.

The patented hair former is a modification of old types of such articles which had long been well known and used in hair dressing. It was designed to be worn in the hair to hold it in the desired shape and usually at the back of the neck. The plaintiff disclosed a former in three simple types made of wire easily bendable and of relatively non-resilient character so that it would remain in the shape to which it was bent as, for instance, copper or iron wire which might be covered, if desired, with fabric, rubber, or some such material. One type of former was the result of bending a piece of wire so that what might be called an elongated loop was formed of a length suitable to receive the short hair at the back of the neck of the user. The sides of this loop were pressed together so as to be substantialy parallel to each other between two clips placed near the ends to hold them in position. One of these clips concealed the ends of the bent wire. This construction provided what may be termed a slot between the side members into which the hair could be inserted. Then by taking hold of the looped ends outside each clip the former could be turned to roll the hair upon itself to the extent desired and when that had been done the ends could be bent inwardly behind the rolled hair to conceal them and to hold the whole in place. This made it possible for the lady who used one to wear it whenever and wherever she pleased without having it visible.

The second type differed from the first only in that the clips were omitted and the wires were held together by clasps at their extreme ends. The third type was a modification of the second by adding clips like those of the first type except that they were made slidable on the wires to enable the user to push them as tightly against the inserted hair as she might want to.

The patented hair former in all types is apparently a useful article which can be made cheaply and easily. Whether it is new in the sense that it required the genius of an inventor to bring it into being depends, of course, upon the prior art of which the patentee must be charged with knowledge whether she in fact did have it or not.

There is some distinction between what are called hair curlers and what are hair formers and it is not to be forgotten that the patent in suit relates to the latter. But the two things are so nearly the same that it is interesting to notice first what was old in respect to hair curlers. Compare, Deering v. Winona Harvester Works, 155 U.S. 286, 15 S.Ct. 118, 39 L.Ed. 153. The main difference between a hair former and a curler is that the former may be worn concealed in the hair which is held in shape by it while the curler is usually withdrawn and should be so made that its withdrawal has

a minimum of uncurling effect upon the hair. Some curlers, however, were adapted to be used concealed and could serve as formers also.

One curler of the latter kind is shown in Patent No. 1,558,523 which was granted to Augustus A. West on October 27, 1925. It was made of soft and readily bendable wire, covered or not, which was bent to form a loop with relatively long arms extending from the loop in a position parallel to each other. These arms were held firmly together by an immovable clip a short way out from the place the wire was bent to form the loop and their outer ends were not joined together. The hair at the back of the user's neck was placed between the arms in that portion extending outwardly from the immovable clip away from the looped end. Then the same rolling up of the hair took place as above described in connection with the use of the patented former and when that had been done it was shown that the West curler could be held so placed in the hair by bending both the looped end and the open end inwardly upon the rolled hair "thus preventing the curler unrolling or freeing itself from the hair". This curler could be removed by unbending and pulling the open end out through the hair or could, of course, be left as a holder of the hair in the form to which it had been rolled and worn in position as a hair former like that of the patent in suit. Another prior art patent, No. 1,465,216 which was granted to Heathcote on August 14, 1923, shows a wire hair curler with arms, firmly held together only at one end, between which the hair was to be placed and rolled upon itself to the wanted position and then held there by bending the ends of the curler inwardly.

A French patent granted to Robin in 1929 shows the curler of much the same shape as that given the hair former of the patent in suit. The disclosure is meagre. It was stated that, "At the present time a g.eat number of models have been created in this article but in spite of that it has been deemed necessary to create hair curlers which do not get lost in use". This was primarily a "woven elastic sliding curler" though it was, indeed, shown in the drawings in three types of which it was said that they "may be made of any cross sections of elastic or non-elastic materials * * *". This patent shows no more of present interest than that the plaintiff was not the first to use a construction which provided looped ends outside clips that held the arms to make a slot for the hair. Though there were other old hair curlers, discussion of more of them would add nothing useful. It is enough for present purposes to point out that the inventive field open to the patentee was made very narrow by the old curlers.

On December 20, 1932, Reissue Patent No. 18,695 was granted to H. Eisler for a hair device. His original application had been filed July 8, 1931 and his original patent had been granted February 9, 1931. All new material was disclosed in his original specifications. As he then stated: "One of the objects of the invention is to provide a simple and easily manipulated device for forming and supporting the hair in a roll, puff, or bun". And further he said that the side members were preferably made of covered flexible wire and that: "After the hair has been inserted between said members, they are squeezed or pressed together to clamp the hair and are rolled axially to wind up the hair * * *. The flexible or pliable end portions * * * are then bent inwardly towards and in back of the neck so as to fasten the roll and firmly secure the device in the hair. * * *, these ends will be substantially covered by loose portions of the hair so as to render the device practically invisible".

The hair former of the patent in suit differs from the device Eisler disclosed only in minor particulars. It was clearly designed to accomplish the same result in the same way. Such slight differences as there are, like looped ends to be grasped instead of plain flat ends and sliding clips in one form instead of flat ones, are of no especial significance and are, at any rate, but a manufacturer's choice of equivalents which cannot be held invention. Such little variances in design come within the every day work of the good mechanic. Burt v. Evory, 133 U.S. 349, 10 S.Ct. 394, 33 L.Ed. 647; Hill v. Wooster, 132 U.S. 693, 10 S.Ct. 228, 33 L.Ed. 502. Consequently, nothing patentable was disclosed. There was nothing, therefore, on which to base the claims in suit and all must be held invalid for that reason.

Decree reversed with directions to dismiss the bill with costs.